1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Jul 01, 2024

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ZACHARY H.,[1]

          Plaintiff,

   v.

MARTIN O'MALLEY, Commissioner of
Social Security,

          Defendant.

No.    1:24-cv-3026-EFS

**ORDER RULING ON CROSS
MOTIONS FOR REMAND AND
REMANDING FOR CALCULATION
OF BENEFITS**

Plaintiff Zachary H. appeals the denial of benefits by the Administrative
Law Judge (ALJ). The parties agree the ALJ erred in her five-step evaluation, but
the parties disagree about the appropriate remedy. After reviewing the record and
relevant authority, the Court remands the case for calculation of benefits.

/

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last
initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS MOTIONS TO REMAND - 1

1

# I.    Background

2

Plaintiff alleges disability due to lumbar degenerative disc disease, lumbar

3

facet arthropathy, facet syndrome pain, hip pain, sciatic nerve pain, type 2

4

diabetes, numbness and tingling in the right foot, right shoulder pain, depression,

5

and obesity.

6

Due to his pain and reduced functioning, Plaintiff protectively filed for

7

supplemental security income benefits on April 11, 2019, alleging an onset date of

8

April 1, 2019.[2] Plaintiff's claims were denied at the initial  level, and Plaintiff

9

requested an ALJ hearing.[3] After an ALJ hearing before ALJ Elizabeth Ebner on

10

January 7, 2021, ALJ Ebner issued on unfavorable decision on April 5, 2021.[4] The

11

Appeals Council denied review on February 9, 2022.[5] Plaintiff appealed to this

12

Court and the case was remanded by stipulation of the parties on October 12,

13

2022.[6] On September 12, 2023, Plaintiff appeared for a hearing before ALJ Cecelia

14

15

16

17

_____

18

[2] AR 214.

19

[3] AR 143, 152.

20

[4] AR 12-30, 71-91.

21

[5] AR 762-767.

22

[6] AR 762.

23

LaCara.[7] On December 13, 2023, the ALJ issued a decision denying Plaintiff's claim.[8] Plaintiff then filed this action.

ALJ LaCara found:

- Step one: Plaintiff had not engaged in substantial gainful activity since the application date of April 11, 2019.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spine disorder, obesity, and depressive disorder. She also found that Plaintiff's diabetes, gout, and cellulitis were not severe impairments.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Specifically, the ALJ noted that she considered Listings 1.15 and 12.04.

- RFC: Plaintiff had the RFC to perform light work except that:

  .
  he can frequently climb ramps and stairs; he can never climb
  ladders, ropes, or scaffolds; he can frequently balance, stoop,
  kneel, crouch, and crawl; he must avoid concentrated exposure
  to industrial vibrations and hazards; and he is limited to simple
  routine tasks.

---

[7] AR 715-742.

[8] AR 687-714.

- Step four: Plaintiff is unable to perform his past relevant work as a furniture assembler and installer, cleaner, auto mechanic, street sweeper, and merchant patroller.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a laboratory sample carrier, a cashier II, and a storage rental clerk.[9]

Plaintiff now appeals ALJ LaCara's denial of disability and asks for an immediate award of benefits.[10] The Commissioner concedes the ALJ erred when relying upon the vocational expert testimony at step five, but the Commissioner asks the Court to remand the matter for further administrative proceedings because there are evidentiary conflicts that must be resolved by the ALJ.[11] The Commissioner also asserts in his brief that the ALJ properly found that Plaintiff did not meet Listing 1.04[12] because he did not show that there was impingement of

_____

[9] AR 692-707.

[10] ECF Nos. 1, 8.

[11] ECF No. 10.

[12] In her decision, the ALJ did not consider Listing 1.04, which was the effective listing on the date Plaintiff's application was filed, and instead considered Listing 1.15, which was effective on the date the decision was issued.

ORDER RULING ON CROSS MOTIONS TO REMAND - 4

a nerve root.[13] Plaintiff avers that because the Commissioner did not address his remaining arguments, he has waived any opposition to Plaintiff's arguments.[14]

## II.    Analysis

**A.    Remand Standard**

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course absent rare circumstances.[15] Three factors must be satisfied for the court to consider remand for payment of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[16]

---

[13] *Id.*

[14] ECF No. 11.

[15] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[17]

## B.    Remand Analysis – Error at Step Five

The parties agree the second factor is satisfied: the ALJ erred in relying upon the testimony of the vocational expert (VE) that there were 10,200 jobs available in the national economy which Plaintiff could perform.  Specifically, the parties agree that the ALJ failed to resolve a conflict between the VE's testimony and the DOT regarding two of the jobs cited.  Additionally, Plaintiff asserts that the total number of 11,000 jobs in the national economy cited by the VE for the sole remaining job is less than the minimum required to meet the standard for substantial numbers, pursuant to Ninth Circuit law.[18]

Plaintiff in his brief does not argue that the ALJ's error in this regard is one which requires remand for a calculation of benefits.  Rather, he argues that because of this error "remand is compelled."  As the parties agree that a remand for further proceedings is appropriate as to this issue the Court will address the other arguments raised by Plaintiff.

---

[17] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

[18] ECF No. 7.

**C.**     **Remand Analysis – Error at Step Three (Listings): Plaintiff establishes error.**

    1.     <u>The Applicable Listing</u>

Plaintiff contends the ALJ failed to consider the appropriate listing, Listing 1.04A, when assessing Plaintiff's spinal injuries at Step Three.  Plaintiff argues that the ALJ erred in rendering an analysis that Plaintiff did not equal Listing 1.15A because the Plaintiff filed his application in April 2019 and the appropriate listing at the time that he filed was Listing 1.04A.[19] The Court disagrees and concludes that the ALJ correctly considered Listing 1.15A but finds in the alternative that the ALJ did not properly consider Listing 1.15A.

Plaintiff's case was remanded by the Appeals Council on December 6, 2022. His supplemental hearing was held on September 12, 2023. On December 3, 2020, the Social Security Administration (**SSA**) announced it would be changing the criteria in the Listing of Impairments used to evaluate claims involving musculoskeletal disorders. These changes became effective April 2, 2021—before Plaintiff's supplemental hearing occurred. Revised Med. Criteria for Evaluating Mental Disorders, <u>85 Fed. Reg. 78164-78189 (December 3, 2020)</u>. The **SSA** explained when the new rules would be applied:

> As we noted in the dates section of this preamble, these final rules will be effective on April 2, 2021. We delayed the effective date of the rules to give us time to update our systems, and to provide training and guidance to all of our adjudicators before we implement the final rules.

---

[19] ECF No. 8, 10.

The current rules will continue to apply until the effective date of these final rules. When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date.

Plaintiff's claim was unadjudicated on April 2, 2021 and remained "pending" on and after that date. Accordingly, the appropriate listing to be considered on the date of Plaintiff's hearing was Listing 1.15A, which was the listing considered by the ALJ.[20]

Listing 1.15A is more restrictive than 1.04A. Listing 1.15 provides the following:

**1.15 *Disorders of the skeletal spine resulting in compromise of a nerve root(s)*** (see <u>1.00F</u>), documented by A, B, C, *and* D:

**A.** Neuro-anatomic (radicular) distribution of one or more of the following *symptoms* consistent with compromise of the affected nerve root(s):

1. Pain; or
2. Paresthesia; or
3. Muscle fatigue.

AND

**B.** Radicular distribution of neurological *signs* present during physical examination (see <u>1.00C2</u>) or on a diagnostic test (see <u>1.00C3</u>) and evidenced by 1, 2, and either 3 or 4:

1. Muscle weakness; and
2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root (see <u>1.00F2</u>); and
3. Sensory changes evidenced by:
    a. Decreased sensation; or

---

[20] AR 693.

b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; *or*

4. Decreased deep tendon reflexes.

AND

**C.** Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

AND

**D.** Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least *one* of the following:

1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or
2. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), *and* a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or
3. An inability to use *both* upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

Listing 1.00(F) explains the criteria that the ALJ will consider when evaluating disorders of the skeletal spine pursuant to Listing 1.15. It provides:

*Compromise of a nerve root(s)*. Compromise of a nerve root, sometimes referred to as "nerve root impingement," is a phrase used when a physical object, such as a tumor, herniated disc, foreign body, or arthritic spur, is pushing on the nerve root as seen on imaging or during surgery. It can occur when a musculoskeletal disorder produces irritation, inflammation, or compression of the nerve root(s) as it exits the skeletal spine between the vertebrae. Related

1
2

symptoms must be associated with, or follow the path of, the affected nerve root(s).[21]

3

The listing goes on to specifically address compromise of a nerve root of the

4

lumbar spine, and states further:

5

6

7

8

9

c. *Compromise of a nerve root(s) of the lumbar spine.* Compromise of a nerve root as it exits the lumbar spine between the vertebrae may limit the functioning of the associated lower extremity. The physical examination reproduces the related symptoms based on radicular signs and clinical tests. When a nerve root of the lumbar spine is compromised, we require a positive straight-leg raising test (also known as a Lasègue test) in both supine and sitting positions appropriate to the specific lumbar nerve root that is compromised.[22]

10

2.    Legal Standard

11

If a claimant meets all of the listing criteria or if his impairments medically

12

equal a listed impairment, he is considered disabled.[23] The ALJ is obligated to

13

consider the relevant evidence to determine whether a claimant's impairments

14

meet or equal one of the specified impairments set forth in the listings.[24] A

15

claimant who does not meet the listing criteria may still be considered disabled at

16

17

[21] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(F)(2) (Effective April 2, 2021.

18

[22]  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00(F)(2)(c) (Effective April 2, 2021.

19

[23] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show

20

that the impairment meets (or medically equals) all of the specified medical

21

criteria, not just some of the criteria).

22

[24] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 416.920(a)(4)(iii).

23

ORDER RULING ON CROSS MOTIONS TO REMAND - 10

1  step-three if his impairment(s) medically equal a listed impairment.[25] Medical

2  equivalence can be established three ways, one of which is:

3      If an individual has an impairment that is described in the listings,

4      but either:

5          a.  the individual does not exhibit one or more of the findings

6              specified in the particular listing, or

7          b.  the individual exhibits all of the findings, but one or more of the

8              findings is not as severe as specified in the particular listing,

9              then we will find that his or her impairment is medically equivalent to

10              that listing if there are other findings related to the impairment that

11              are at least of equal medical significance to the required criteria.[26]

12     "[I]n determining whether a claimant equals a listing under step three . . .

13  the ALJ must explain adequately his evaluation of alternative tests and the

14  combined effects of the impairments."[27]

15

16

17  [25] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)

18  (requiring a claimant to show that the impairment meets (or medically equals) all

18  of the specified medical criteria, not just some of the criteria).

19  [26] *Id.*

20  [27] *Marcia*, 900 F.2d at 176; *see also Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001)

21  (The ALJ "must evaluate the relevant evidence before concluding that a claimant's

22  impairments do not meet or equal a listed impairment.").

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

      Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[28]  However, the ALJ need not recite the reasons for her step-three determination under the listings portion of the decision so long as the relevant evidence and underlying findings are discussed in the ALJ's decision.[29] Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing.[30]

      Pursuant to the applicable regulations, an ALJ may find that a plaintiff meets a listing without a medical opinion supporting that finding, but cannot make a determination that a plaintiff equals a listing unless that finding is supported by a medical opinion of record from an acceptable medical source that the plaintiff's impairment medically equals the listing.[31]

---

[28] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

[29] *Lewis,* 236 F.3d at 513.

[30] *Gonzalez v. Sullivan,* 914 F.2d 1197, 1201 (9th Cir. 1990).

[31] Soc. Sec. Ruling 17-2p. *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (requiring a claimant to show that the impairment meets (or medically equals) all of the specified medical criteria, not just some of the criteria).

3.    The ALJ's Findings

The ALJ articulated the following reasoning as to her finding that Plaintiff

did not meet Listing 1.15:

> While workup has suggested possible nerve root involvement, his spinal
> condition does not meet listing 1.15 because he does not have the
> requisite neurologic examination findings outlined in 1.15B; require an
> assistive device; or have no ability to use both upper extremities or
> either upper extremity independently to carry out tasks involving fine
> and gross movements. Findings on physical examinations are largely
> normal to include normal neurological functioning with intact sensory
> and strength; a normal gait with no assistive device; and normal upper
> extremities with a full range of motion (see e.g. B1F6, 16; B2F55, 69;
> B3F12, 32; B5F18, 26; B6F5, 34; B10F12; B12F38; B16F30; B28F9;
> B31F16; finding #4).[32]

4.    The Parties' Arguments

Plaintiff argues that the ALJ erred in two regards.  First, he argues that the

ALJ erred by failing to consider the opinion of Dr. Rox Burkett that Plaintiff meets

Listing 1.04 and Listing 1.02 and equals the listing for failure to be weight-bearing

for a period of twelve months or more.[33]  Additionally, he argues that the ALJ

failed to consider evidence that Plaintiff met the listing, noting: "1.) neuroanatomic

distribution of pain (*e.g.*, Tr. 333, 402, 590, 1001, 1017, 1285); 2.) limited motion of

the spine (Tr. 314, 404, 1291); 3.) motor loss with muscle weakness (Tr. 405, 1018,

---

[32] AR 693.

[33] ECF No. 8.

ORDER RULING ON CROSS MOTIONS TO REMAND - 13

1209); 4.) loss of reflex (Tr. 405, 1018); 5.) and positive straight leg raise (SLR) (Tr. 405) and slump test (*id.*)."[34]

The Commissioner argues that the evidence on which Plaintiff relies does not show any compromise of a nerve root, citing to AR 1211.[35] In his rely brief Plaintiff argues that the Commissioner's assertion is incorrect because the record does indicate compression of a nerve root, and that Plaintiff raised that issue in his opening brief and the Commissioner did not dispute his argument.[36]

---

[34] *Id.*

[35] ECF No. 10.

[36] ECF No. 11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

5.    Analysis

The Commissioner's sole argument regarding the issue of whether Plaintiff meets or equals the listing for disorders of the skeletal spine resulting in nerve disorders is that the medical record for an EMG which was performed by Daniel Hocson, MD, on August 23, 2021, did not support that he had any nerve root compromise.[37] The Commissioner fails to explain the manner in which he believes that the one record at issue does not establish compromise of a nerve root.

Dr. Hocson examined Plaintiff on that day and made the following findings:

[Plaintiff] is a 40-year-old diabetic male patient with tenderness at his right sacroiliac joint. Faber's tests caused groin/hip discomfort, bilaterally. Straight leg raises were generally uncomfortable at the low back, bilaterally. Pinwheel sensation was blunted on the right lateral leg compared to the left NCS: After warming the feet electrical stimulation was used to test nerves in the lower extremities. Sural sensory and peroneal motor studies were normal. Both tibial CMAP amplitudes were low, but symmetric. This could be a technical issue, like ankle effusion, or suggestive of a component of tarsal tunnel syndrome, axonal loss, or other factor. The findings were symmetric EMG: Using a concentric needle I detected increased insertional activity at the right lumbar paraspinals, the right peroneus longus and the right medial gastrocnemius. This provides evidence suggestive of a right S1 radiculopathy that may or may not include the L5 nerve. He will follow up with Dr. Kim. Consider lumbar MRI.[38]

---

[37] ECF No. 10 at 2-3.

[38] AR 1208.

ORDER RULING ON CROSS MOTIONS TO REMAND - 15

Dr. Hocson opined that there was a right S1 radiculopathy which possibly included the L5 nerve and that an MRI should be ordered to rule out nerve root involvement. While the Commissioner is correct that this record standing alone is not clear proof of nerve root involvement, it is when considered with the record as a whole. When it is read in context alongside the results of the MRI of the lumbar suggested by Dr. Hocson, it does support Plaintiff's argument that there was involvement of the L5 nerve.

The most recent MRI of the lumbar spine taken on June 21, 2023, indicates that there is at the L4-5 level a disc bulge, a small central disc protrusion unchanged since his 2016 MRI, a dorsal annular tear, facet arthropathy with effacement of the ventral thecal sac and mild bilateral foraminal encroachment.[39] At the L5-S1 level, the MRI showed a large central disc protrusion/occlusion with disc bulge, facet arthropathy ligament hypertrophy causing slight effacement of the ventral thecal sac and moderate bilateral foraminal encroachment.[40]

Effacement of the ventral thecal sac is a condition in which the thecal sac is being compressed or flattened against the spinal cord.[41] Foraminal encroachment is by definition a condition in which degeneration of the spine has caused obstruction

---

[39] AR 1282-1283.

[40] *Id.*

[41] Spine Info, *Thecal Sac Effacement: Definition*, Dave Harrison, MD, www.spineinfo.com (June 27, 2024).

1

2

3

of the foramina, the openings on the sides of the vertebrae where the spinal nerves pass through.[42] Thus, there is compression of the L5 nerve at the L4-5 level and there is compromise of the L5 nerve at the L5-S1 level.

4

5

6

7

8

9

10

Additionally, the Court notes that in January 2021 Dr. Burkett, a physician who served as a consultant for the Administration for many years opined that Plaintiff also equaled the weight bearing listing.  Dr. Burkett opined that Plaintiff would not be able to be weight bearing for more than thirty minutes due to the instability in his back at the L4-5 level.[43]  The instability in Plaintiff's back at the L4-5 level was first noted in July 2018 when an x-ray of the lumbar spine indicated the following:

11

12

13

14

> Standing AP lateral flexion extension views of the lumbar spine were reviewed.  He has degenerative changes.  He has evidence of angular instability at L4-5 with the bony endplates going from a degree of extension in extension lateral to 6 degrees of flexion the flexion lateral for total 14 degrees of motion. He also develops L4-5 retrolisthesis in flexion lateral x-ray. There is no evidence of tumor, fracture, infection. IMPRESSION: L4-5 angular instability.[44]

15

16

17

When the musculoskeletal listings were revised effective April 2, 2021, the listing for failure to be weight-bearing was revised to serve as paragraph D of Listing 1.15 rather than a separate listing.  While the criteria of paragraph D does

18

19

20

[42] Cedars-Sinai Medical Center, Foraminal Stenosis | Cedars-Sinai.org (June 25, 2024).

21

[43] AR 303-304.

22

[44] AR 676.

23

not use the term weight-bearing, it describes an individual who is required to use either a walker or two-separate crutches in order to ambulate for extended periods, which is by definition the inability to be fully weight-bearing.  This is of sone significance in this case because the ALJ specifically stated in her reasoning that she did not find evidence that Plaintiff met the paragraph D criteria of Listing 1.15 and did not consider Dr. Burkett's opinion that he equaled the criteria.  The ALJ did not consider Dr. Burkett's opinion in her opinion in any manner, either as to his opinion that Plaintiff met or equaled the musculoskeletal listings or that he was unable to stand for more than 30 minutes a day due to instability of his spine at L4-5 until he underwent a fusion surgery.

Because the Commissioner erred in arguing that Plaintiff did establish that he met the listing solely because he did not provide proof of nerve root compromise, the Court concludes that Plaintiff has established that he meets Listing 1.15.  The record, viewed as a whole, supports a finding that there is compromise of the S1 nerve. Accordingly, the Court remands for calculation of benefits.

1

**D.    Medical Opinion: The Court finds this issue moot.**

2

3        Plaintiff argues the ALJ erred in her evaluation of the medical opinions and

4    that the appropriate remedy is to credit the opinion and thereby remand for a

5    calculation of benefits.[45]  The Commissioner, in his responsive pleading, did not

6    address the fact that the ALJ did not consider Dr. Burkett's opinions at all and

7    addressed the issue of the ALJ's consideration of the medical opinions and

8    subjective complaints in one vague, conclusive statement that:

> As for the specific nature of Plaintiff's functional limitations, the ALJ
> considered several medical opinions and findings, some of which
> supported the ALJ's residual functional capacity assessment and
> contradicted other medical opinions and Plaintiff's own self-reports.[46]

        It is notable that the Commissioner failed to cite to any legal authority

in support of his assertions that the ALJ's consideration of either the medical

opinions or the "Plaintiff's own self-reports" was proper.

---

[45] ECF No. 8, p. 9-10.  An ALJ must consider and articulate how persuasive she

found each medical opinion, including whether the medical opinion was consistent

with and supported by the record. 20 C.F.R. §§ 404,1520c(a)–(c); *Woods v. Kijakazi*,

32 F.4th 785, 792 (9th Cir. 2022).

[46] ECF No. 10, p. 3.

1
2
3

In his reply brief, Plaintiff avers that because the Commissioner has failed to offer a defense to Plaintiff's argument, he should be considered to have waived the argument.[47]

4
5
6
7
8

Plaintiff is correct that there is precedence in this circuit that the failure to adequately address an issue in a brief serves as an abandonment of that issue.[48]  It has been held that a vague cursory and conclusive statement in a brief with no citation to legal authority does not constitute proper argument for purposes of avoiding abandonment.[49]

9

Because the Court has remanded the case, this issue is moot.

10

**E.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

11
12
13
14
15
16

Plaintiff argues the ALJ failed to properly assess his subjective complaints. Because the Court has remanded the case, this issue is also moot.  Again, as a cautionary note, the Court advises that the cursory statement put forth in the Commissioner's brief does not constitute proper development of an argument pursuant to the prevailing rule of law in this Circuit and advises counsel accordingly.

17
18
19
20
21
22
23

[47] ECF No. 11, p. 8.

[48] *Wilcox v. Comm'r*, 848 F.2d 1007, 1008 n.2 (9th Cir. 1988).

[49] *Falls v. Soulbound Studios, LLC*, No. 22-35863, 2023 WL 7042528, at *1 (9th Cir. Oct. 26, 2023).

### III.    Conclusion

Remand for an award of benefits is appropriate. Plaintiff argues that the evidence conclusively establishes that he meets or equals Listing 1.15 and that the ALJ failed to properly consider that evidence. There is no useful purpose in remanding for furthering proceedings.[50]

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 8**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits from the alleged disability onset date.

4.    The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 1st day of July 2024.

_Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge

---

[50] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).

ORDER RULING ON CROSS MOTIONS TO REMAND - 21